IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARGARET LUELLA DE BEAUDRAP**
**and JOSEPH DE BEAUDRAP,**

        **Plaintiffs,**

v.    No. CIV 04-464 LFG/DJS

**WERNER ENTERPRISES, INC.,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Werner Enterprises, Inc.'s ("Werner's") Motion *In Limine* to Exclude the Testimony of Plaintiffs' Life Care Expert, Rhonda St. Martin, filed February 7, 2005 [Doc. No. 64]. The Motion is fully briefed. [Doc. Nos. 65, 81, 82, 89, 92.] After careful consideration of the pertinent law, pleadings and attachments, the Court decides that Werner's motion to preclude Plaintiffs' life care expert from testifying about the projected costs of Joseph de Beaudrap's long-term care should be granted. The Court's reasoning follows.

### Background

This case arises out of an automobile accident, occurring on March 29, 2003, outside of Thoreau, New Mexico. Plaintiff Joseph de Beaudrap ("Mr. de Beaudrap"), who is approximately 78 years old, was severely injured when a Werner truck collided with the Honda Odyssey driven by his

1

wife, Margaret Luella de Beaudrap ("Mrs. De Beaudrap").  The driver for Werner was pronounced dead at the scene.  Plaintiffs filed a Complaint for Personal Injuries and Money Damages, asserting, *inter alia*, negligence on the part of Werner.  Defendant denies the allegations.

As a result of the car accident, Mr. de Beaudrap underwent emergency medical care for a traumatic brain injury and other multiple traumas, including various fractures.  [Doc. No. 65, Ex. B.]  He has been diagnosed with moderate to severe right radial neuropathy and moderate right ulnar neuropathy.  His gait is impaired and he is unable to move to and from his hospital bed independently.  [Id.]  Mr. de Beaudrap currently resides in a long-term care facility in Alberta, Canada.

Plaintiffs contend that Mr. de Beaudrap will require life-long institutional care, including nursing care, physician follow-up care, medications, durable medical equipment, medical evaluations, laboratory work and psychiatric care.  In order to prove the cost of Mr. de Beaudrap's life-care expenses, Plaintiffs hired Rhonda St. Martin to provide expert testimony on the "cost of American dollars for long-term care needs.  In other words, placement in a long-term care facility in the U.S."  [Doc. No. 65, p. 2.]  Ms. St. Martin prepared an expert report, estimating charges for Mr. de Beaudrap's long-term care in Albuquerque, New Mexico.  It is undisputed that the de Beaudraps currently live in Alberta, Canada, that Mr. de Beaudrap receives his medical care in Canada, and that they have no intention to return to New Mexico.  [Doc. No. 65, attachments.]

## Motion in Limine

Werner asks that Ms. St. Martin's testimony be excluded in its entirety on grounds that it lacks foundation and has no probative value.  Werner does not specifically challenge Ms. St. Martin's expertise in the field of life care planning, nor does it challenge the fact that Mr. de Beaudrap will need long-term care.  Werner argues that Ms. St. Martin's testimony has no probative value because

2

it is based on costs for long-term care in the United States, even though Mr. de Beaudrap resides in a long-term care facility in Canada.

Ms. St. Martin testified that she does not provide dollar estimates for foreign countries, has only a "limited understanding" with regard to how the Canadian health care system works, and believes that the Canadian health care system is social and that a Canadian dollar amount cannot be calculated for Mr. de Beaudrap's long-term care. [Doc. No. 65, Ex. A, St. Martin Dep. at 6-7.] She has not done any generic research into the Canadian health care system and has never prepared a report that dealt with health care costs in Canada. [Id.] The figures that Ms. St. Martin projected for Mr. de Beaudrap's long-term care were all based on charges for care in Albuquerque, New Mexico. [Id. at 21.] She supports her opinion on future medical care costs by relying on drug prices in Albuquerque without any consideration of the differences in pharmaceutical costs between Canada and the United States. Ms. St. Martin is not aware of what non-medical services are being provided to Mr. de Beaudrap in Canada, nor whether he is in a private or shared room.

Moreover, Werner notes that Ms. St. Martin did not visit Mr. de Beaudrap, did not speak to treating doctors and did not visit his life care facility. Instead, Ms. St. Martin read deposition transcripts of a treating doctor and nurse, watched Mr. de Beaudrap's videotaped deposition, and reviewed the pertinent medical records. Among other things, she opines that Mr. De Beaudrap would be required to undergo monthly psychiatric treatment with psychotropic medications. However, there is nothing in the record to show that any treating physician, psychiatrist or psychologist has prescribed such a regimen for Mr. de Beaudrap, nor do Plaintiffs argue that he has been prescribed or is taking anti-depressant medications.

Plaintiffs respond that because New Mexico is the forum state, New Mexico choice of law governs the determination of Mr. de Beaudrap's damages. [Doc. No. 82.] Plaintiffs further argue that the "rights and liabilities of persons injured in automobile accidents are determined under the laws of the State where the accident happened." [Id.] Thus, according to Plaintiffs, a New Mexico jury should consider the costs of injury according to the reasonable costs for such care in New Mexico rather than in Canada.

Plaintiffs also complain that Werner seeks the benefit of the Canadian taxpayers'[1] subsidy of the Canadian health care system in order to reduce the dollar amount of its obligation for Mr. de Beaudrap's long-term care. According to Plaintiffs, such a reduction in damages is "analogous to a collateral source of medical insurance reimbursement," which is prohibited under New Mexico law.

## Discussion

Under Fed. R. Evid. 104 and 702, it is well established that the district court has a "gatekeeper" obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir.) (*citing* Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589, 592-97 (1993)), *cert. denied*, 540 U.S. 1003 (2003). The trial court has discretion in how it conducts its gatekeeper role, but it has no discretion to avoid performing that function. Id. at 1223 (internal citations omitted); Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1119 (10th Cir. 2004), *as clarified on reh'g*, __ F.3d __, 2004 WL 3206870 (10th Cir. Dec. 6, 2004). The need for gatekeeping is because expert evidence has the potential to be both "powerful and quite misleading." Daubert, 509 U.S. at 595.

---

[1] Mrs. de Beaudrap testified that she holds dual citizenship, apparently in Canada and the United States.

When a jury can decide a matter based on its common knowledge without the need for specialized expertise, expert testimony is not required. United States v. Brown, 540 F.2d 1048, 1054 (10th Cir. 1976), *cert. denied,* 429 U.S. 1100 (1977). *See also* McEwen v. City of Norman, Okla., 926 f.2d 1539, 1546 (10th Cir. 1991). However, when a fact finder is asked to determine the costs for a life-care plan reasonably expected to be incurred in the future, expert testimony is required. These are not matters that fall within the ken of a lay person, nor are these the kinds of determinations that a jury can make in the absence of medical, technical or specialized knowledge. Fed. R. Evid. 702.

It is likely that due to Ms. St. Martin's knowledge, skill, experience and training, she will qualify as an expert to offer opinion testimony in life care planning. However, that is not enough. rule 702 focuses on helpfulness to the trier of fact as the essential condition of admissibility. For the proposed opinion testimony to be helpful, Ms. St. Martin must be able to provide evidence on the cost of Mr. de Beaudrap's care in the area where his treatment is being provided or, at least, in the area where Mr. de Beaudrap expects to receive his care.

Here, the issue is not necessarily Ms. St. Martin's expertise in life care plans, but instead, the *relevance* of her testimony in relation to the facts in this case. In fulfilling its gatekeeping function, the court must assess whether the proposed expert testimony is sufficiently "relevant to the task at hand." Bitler, 391 F.3d at 1121 (internal citation omitted). *See also* Worthington v. Wal-Mart Stores, Inc., 257 F. Supp. 2d 1339, 1341-42 (D. Kan. 2003) (court decides whether the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"). Relevant evidence is such that has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." Bitler, 391 F.3d at 1121 (*citing* Fed. R. Evid. 401).

In Daubert, the United States Supreme Court described this consideration of relevancy to be one of "fit." Id. (*citing* Daubert, 509 U.S. at 591). The trial court must look at the "logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purposes of aiding the trier of fact." Id. An expert's proffered evidence may be found scientifically valid and reliable, yet may not have a sufficient "fit" to the issue at hand. Id. Indeed, some courts have specifically required that expert testimony be founded on knowledge of local conditions. Taylor v. Ouochita Parish School Board, 648 F.2d 959, 970 (5th Cir. 1981) (court did not abuse its discretion in excluding testimony of an expert who had no knowledge of local conditions); Wilder Enterprises Inc. v. Allied Artists Pictures Corp., 632 F.2d 1135, 1143-44 (4th Cir. 1980) (if there is evidence that film distribution costs differ due to locality, expert testimony is required; if film distribution costs do not differ based on geography, local expertise is not required).

In order to analyze whether Ms. St. Martin's proffered expert testimony has a sufficient "fit" to the issue of damages with respect to Mr. de Beaudrap's future medical care in Canada, the Court examines the pertinent New Mexico Uniform Jury Instructions. The general jury instruction on the "measure of damages" provides that the fact finder must "fix the amount of money which will reasonably and fairly compensate him for any . . . damages proved by the plaintiff to have resulted from the negligence . . . as claimed . . . ." UJI 13-1802 (2005). The more specific jury instruction for "medical expense" states that the fact finder will award "[t]he reasonable expense of necessary medical care, treatment and services received . . . and the present cash value of the reasonable

expenses of medical care, treatment and services reasonably certain to be received in the future." UJI 13-1804 (2005).

The Court agrees with Plaintiffs that the substantive law of New Mexico law applies to determine the substantive rights and liabilities related to an automobile accident that occurs in New Mexico. Clearly, New Mexico's law of negligence and related damages apply. However, that does not mean that the evidence presented to support Plaintiffs' damages can only be based on New Mexico costs of medical care when the person resides in another country and has no intention to return to New Mexico.[2] Indeed, having the jury determine the reasonable costs of a life care plan in Canada, in the absence of Canadian costs, would compel the jury to guess and speculate.

Here, Werner refers the Court to several published articles regarding the differences of costs in the two health care systems and asks that the Court take judicial notice that substantial differences in costs exist between the United States and Canadian health care systems. Under Fed. R. Evid. 201(b), a court may take judicial notice of facts that are not subject to reasonable dispute in that the facts are generally known within the territorial jurisdiction of the trial court or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The Court will take such notice under the circumstances of this case. Moreover, Plaintiffs had the opportunity to disagree with Werner's proposition but did not do so. Indeed, they appear to agree that the costs for long-term health care in Canada are substantially shouldered by that country's health care system. For example, Plaintiffs state that the de Beaudraps are spending approximately $1200.00

---

[2]The Court rejects Plaintiffs' argument that, under the "collateral source" doctrine, evidence of costs of care in Canada should not be admitted to reduce the amount of damages Plaintiffs seek to compensate Mr. de Beaudrap for his injuries. Plaintiffs have not demonstrated that the Canadian health care system, under the facts of this case, constitute a "collateral source."

7

U.S. Dollars for Mr. de Beaudrap's nursing home care in Canada, while the "majority of the expense of his care is born by the Canadian health care system . . . ."[3] However, they provide no estimate or breakdown as to the specific costs of Mr. de Beaudrap's care for which the Canadian system pays.

There is no question that, under the substantive law of New Mexico, damages cannot be based on surmise, conjecture or speculation. They must be proved with "reasonable certainty." Rael v. F & S Company, 94 N.M. 507, 511 (Ct. App. 1979), *writ quashed*, 94 N.M. 675 (1980). "The ultimate fact with the plaintiff has the burden of proving is future damages reasonably certain to occur as a result of the original injury." Id. (internal citations omitted).

Ms. St. Martin's proffered estimate of long-term health care costs for Mr. de Beaudrap based on care in New Mexico simply provides no guidance to the fact finder as to the future damages that are "reasonably certain" to occur. The Court agrees that, if liability is found, Mr. de Beaudrap is entitled to an appropriate award of damages for his future health care proximately caused by Defendant's negligence. In other words, it is clear that costs for future medical care are reasonably likely to occur, but there is no evidence being offered as to what those costs will be related to Mr. de Beaudrap's ongoing care in Canada. The Court determines that no logical relationship exists between Ms. St. Martin's proffered evidence on costs of care in New Mexico and the material issue of reasonable costs for Mr. de Beaudrap's future medical care as provided in Canada. Ms. St. Martin's projected figures for that care are nothing more than conjecture when applied to the Canadian health care system. Plaintiffs bear the burden of proving with relevant and admissible

---

[3] Plaintiffs provided no admissible evidentiary support as to the $1200/month they are paying in U.S. Dollars for Mr. De Beaudrap's medical care in Canada.

evidence that such damages are reasonably certain to occur and have not done so here in a manner that "advances the purposes of aiding the trier of fact."

Based on this analysis, the Court will not permit Ms. St. Martin to present testimony on costs of long-term medical care in U.S. Dollars and/or costs of such care in New Mexico care facilities. The Court also will not permit Ms. St. Martin to testify that in her opinion Mr. de Beaudrap will require future psychiatric care and related medications since Mr. de Beaudrap is not receiving any such care now and no evidence supports a determination that within a reasonable medical probability the need for future psychiatric or psychological care was proximately caused by the accident. Moreover, none of Mr. de Beaudrap's treating doctors have indicated that he needs such care. In other words, Ms. St. Martin cannot testify as to the mere possibility that Mr. de Beaudrap will require psychiatric care without supporting medical evidence. In addition, Ms. St. Martin is unable to provide an opinion as to the reasonable costs for such treatment since she has no information as to the costs for that treatment and related medication in Canada.

## Conclusion

For the above-stated reasons, Ms. St. Martin will not be permitted to provide testimony as to the costs associated with her proffered life care plan for Mr. de Beaudrap's care in New Mexico. The Court will permit Ms. St. Martin to testify, if needed, as to the general question of whether Mr. de Beaudrap will require long-term care related to his injuries.

IT IS THEREFORE ORDERED that Defendant's Motion *In Limine* to Exclude the Testimony of Plaintiffs' Life Care Expert, Rhonda St. Martin [Doc. No. 64] is GRANTED to the extent that Ms. St. Martin is not permitted to testify to projected costs for Mr. de Beaudrap's long-

term care, based on costs of care in the United States and/or Albuquerque, New Mexico, or to testify about Mr. de Beaudrap's alleged need for psychiatric care and related medications.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge
(sitting by designation)